# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| RUSSELL A. D., | No. 23-cv-65-CJW |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY[1], | |
| Defendant. | |

_____

Russell A. D. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

Claimant was born in 1969. (AR[2] at 103.) He is a high school graduate. (*Id.* at 280.) Claimant allegedly became disabled due to traumatic brain injury, PTSD, depression, anxiety, bilateral Dupuytren's contracture, torn glenoid labrum, torn biceps, bilateral shoulder pain, bilateral ulnar nerve entrapment, bilateral carpal tunnel syndrome, and bilateral tarsal tunnel syndrome. (*Id.* at 103.) Claimant's onset of

---

[1] On February 19, 2025, Leland Dudek was named the Acting Commissioner of Social Security.

[2] "AR" cites refer to pages in the Administrative Record.

1

disability date is April 19, 2021. (*Id*.) On April 29, 2021, Claimant protectively filed his application for DIB. (*Id*. at 12, 102.) His claim was denied originally on October 14, 2021 (*id*. at 12, 102-111), and was denied on reconsideration on January 25, 2022. (*Id*. at 12, 112-124.) A hearing was held on September 12, 2022, with Claimant and his attorney Timothy Tripp appearing by online video before Administrative Law Judge ("ALJ") Kim A. Fields. (*Id*. at 33-60.) Vocational Expert ("VE") Randall Harding also appeared at the hearing telephonically. (*Id*.) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on October 7, 2022. (*Id*. at 12-26.)

Claimant requested review and the Appeals Council denied review on June 8, 2023. (*Id*. at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On August 8, 2023, Claimant timely filed his Complaint in this Court. (Doc. 1.) On March 8, 2024, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work

experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    The ALJ's Findings

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through June 30, 2024. (AR at 14.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of April 19, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, tarsal tunnel syndrome, neurocognitive disorder, depression, anxiety, and PTSD. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 15.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 1.18 (abnormality of a major joint), 12.04 (depressive disorders), 12.06 (anxiety disorders), and 12.15 (PTSD). (*Id.*) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 16.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) with the following additional limitations: the [C]laimant can occasionally reach overhead on the left, but can never reach overhead on the right; climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, and crouch, but never crawl; perform simple, routine tasks involving simple work related decisions; can have occasional contact with supervisors and occasionally interact with co-workers; never interact with the general public; and make simple work-related decisions.

(*Id.*) Also at the fourth step, the ALJ determined that Claimant was unable to perform his past relevant work. (*Id.* at 24.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including router clerk, mail clerk (opener/sorter), and marker/pricer. (*Id.* at 25.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 26.)

## B. *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it."

*Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to properly evaluate the medical opinions of treating physician, Dr. Marc Hines, M.D., and treating psychologist, Dr. Martin Edwards, Ph.D.; and (B) failing to provide the VE with a hypothetical question that captured the concrete consequences of Claimant's physical and mental impairments. (Doc. 10.)

### A. Medical Opinions

#### 1. Dr. Hines

##### a. Parties' Arguments

Claimant points out that he had a long treatment relationship with Dr. Hines. (Doc. 10 at 18.) Claimant asserts that Dr. Hines's opinions are "well supported by his own medical records along with objective findings, i.e., the MRI findings in 2021, and [are] consistent with the evidence of record." (*Id.* at 19.) Claimant maintains that Dr. Hines's opinions are "well supported by evidence of record, and a finding to the contrary is unfounded." (*Id.*)

7

The Commissioner argues that the ALJ properly articulated her reasons finding Dr. Hines's opinions unpersuasive, particularly explaining her "reasoning in terms of at least supportability and consistency." (Doc. 12 at 25.)  The Commissioner maintains that the Claimant's "presentation of evidence the ALJ already considered is just an invitation for this court to reweigh the evidence in [the Claimant's] favor." (*Id.* at 26.)

### b.  *Pertinent Medical Evidence*

On December 10, 2020, Claimant was referred by his employer to Daryl Short, DPT, for a functional capacity evaluation.  Claimant reported that he experiences "constant pain in his neck and right shoulder that ranges from 4/10 to 10/10," which "increases with increased activity." (AR at 509.)  Claimant also reported:

> being independent with his self-care activities—has increased pain with pulling clothes on/off overhead . . . or reaching his right arm to put on heavier coats.  Reports he is able to sit, stand and walk with no problems.  Reports that his sleep pattern has been disrupted in that he wakes 4 to 5 times per night due to pain in his right shoulder.  Activities that cause his pain to increase are: reaching/lifting above shoulder height and/or performing tasks that require him to get his elbows away from his body.

(*Id.*)  Upon examination, Dr. Short opined that due to decreased strength and endurance of his neck and shoulder, Claimant should be: (1) limited to light work (lifting up to 20 pounds on an occasional basis to waist level); (2) limited to occasional elevated work and reaching at shoulder height and above with material and non-material handling activities; and (3) "limit lifting with his right arm at shoulder height or above to an occasional basis up to 4 [pounds] and no frequent activity with material or non-material handling activities at shoulder height and above." (*Id.* at 505-506.)

On March 1, 2022, Dr. Hines provided Claimant's attorney with a letter outlining Claimant's physical limitations and functional abilities.  In the letter, Dr. Hines reviewed Claimant's medical history and offered opinions on Claimant's ability to work:

This patient suffers from severe anxiety disorder but also has CTS B as well as dupuytren's contracture [right greater than left] as well as ulnar compression B. He has been followed by orthopedics and two opinions suggest he needs to have a [right] shoulder replacement. Even 4 pounds can give him more pain and restricted motion. His [left] should is also impaired but they are suggesting some surgery to assist it. . . .

He also suffers from PTSD and has expressed suicidality. . . .

(*Id.* at 1323.) Dr. Hines also noted that Claimant's orthopedists restricted him to 11 pounds lifting, pushing, pulling to both arms. (*Id.*) Based on the foregoing history, Dr. Hines opined that "[a]ll of these conditions compound to create a situation where it is not conceivable that [Claimant] could return to work." (*Id.*)

Dr. Hines also noted that Claimant had a history of plantar fasciitis and ankle sprains, affecting his right foot greater than his left foot. (*Id.*) Dr. Hines indicated that Claimant "has been offered surgery foermany [sic] of the above conditions but hesitates due to no help at home if he were unable to use hands or feet." (*Id.*) Dr. Hines opined that such conditions "prevent even the sedentary work that has been proposed." (*Id.*) According to Dr. Hines, Claimant is precluded from sitting for eight hours due to back pain and loss of feeling in both legs. (*Id.*) Dr. Hines also opined that Claimant pain management injections preclude from sitting continuously for more than 30 minutes. (*Id.*) Further, Dr. Hines stated that "[s]tanding even just doing his own dishes [Claimant] develops foot pain[, with right greater than left,] but bilaterally and the pain overcomes his usual personality and he yells and rants at his dog. He avoids people due to his anxiety disorder." (*Id.*) Additionally, Dr. Hines noted that Claimant's right arm is restricted and cannot be used for repetitive work due to a shoulder impairment. (*Id.*)

Dr. Hines also opined that Claimant's "pain clearly interferes with his attention and concentration with the pain intruding on his thinking to the point that he can hardly think or concentrate at all." (*Id.* at 1324.) Dr. Hines noted that Claimant suffers from

migraines which occur one to two times per week and cause visual effects which prevent him from seeing well for three to four hours. (*Id.*)

Dr. Hines concluded that:

[Claimant] would therefore not be able to work an 8 hr day even with scheduled or unscheduled breaks because the combination of his difficulties would end up preventing meaningful work after 30 minutes (or less) even with breaks.

His ability to sustain his employment without missing work (easily more than twice per month) would in fact find a problem preventing work on virtually every workday.

It is unlikely that merely slowing down the pace will outwit his multiple pain disorders and I feel in view of the total aspect of the multiple disorders that he is completely disabled.

Surgical or other intervention has as yet not caused an evolution in his difficulties to evade the several disorders. It is my opinion that his disability is permanent in the sense that I cannot conclude that he will receive sufficient relief in the foreseeable future.

(*Id.*)

### c. *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may,

but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### d. Analysis

In considering Dr. Hines's opinions, the ALJ determined that:

> The opinion of Marc Hines, M.D., is not persuasive. Dr. Hines provided a narrative statement in which he indicated that the claimant would be limited to lifting 11 pounds, sitting for no more than 30 minutes at one time, would miss work more than twice per month, would have difficulties with vision for 3 to 4 hours once to twice per week, and would overall be prevented from "meaningful work after 30 minutes" of an 8-hour workday. This opinion is not well-supported. It does not provide reference to the objective evidence relied upon. As with opinion of Dr. Hadlock, it is inconsistent with the findings of the claimant's December 2020 functional capacity evaluation. Moreover, it is generally conclusory in nature indicating that "it is not conceivable that he could return to work." This opinion, further, appears to be out of proportion to the level of restriction that is supported by the objective medical evidence. (Exhibit B32F).

(AR at 23.) The ALJ also noted that Claimant "has been treated for significant pain complaints from multiple musculoskeletal impairments over the course of the period at issue. However, he has generally shown a good response to treatment, including surgery and steroid injections. His pain has otherwise been treated with muscle relaxers and anti-

inflammatory medications. It does not appear that he has required use of narcotic pain medications." (*Id.* at 24.) In support of these conclusions, the ALJ thoroughly reviewed Claimant's medical history and pointed to evidence throughout the record where Claimant's pain complaints were treated and managed by surgery, medication, and physical therapy. *See* AR at 17-20; *see also id.* at 549, 557, 567, 571, 583, 1070, 1353 (history of treating shoulder pain with epidural injections); 690-91 (shoulder imagining showing mild and/or minimal degenerative changes); 1218 (post-operative shoulder surgery note showing minimal pain and doing well); 1067, 1375, 1559 (physical examination on medical visits showing normal gait, sensation and/or strength). The Commissioner also correctly points out that in his letter, Dr. Hines provides no citations to objective findings which support his opinions. (Doc. 12 at 25; AR at 1323-24.)

Based on the foregoing, I find that the ALJ both properly considered Dr. Hines's opinions and properly addressed the consistency and supportability of Dr. Hines's opinions. The ALJ also properly supported her conclusions that Dr. Hines's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Hines's opinions, and I recommend that the District Court affirm this part of the ALJ's decision.

### 2. Dr. Edwards

#### a. Parties' Arguments

Claimant argues that the ALJ's reasoning for finding Dr. Edwards's opinions unpersuasive "do not withstand the required scrutinizing analysis." (Doc. 10 at 20.) Claimant maintains that "Dr. Edwards' opinion is supported by and is consistent with the

voluminous medical record in this case." (*Id.* at 21.) Specifically, Claimant points out that other medical source opinions: (1) found that he would have "marked" difficulty interacting with supervisors, co-workers, and the public due to anxiety, irritability, and mistrust of others (Dr. Conditt, a consultative medical source referred by DDS); (2) recommended mental health care for depression (Dr. Rastogi, a consultative medical source for pain); (3) found that Claimant's pain interferes with Claimant's ability to think and concentrate (Dr. Hines's opinion); and (4) found Claimant to be socially and occupationally impaired (Dr. Oleskowicz, examining psychiatrist).[3] (*Id.*) Claimant concludes that "[t]he ALJ's failure to accord the medical opinions [of Dr. Edwards] persuasiveness is not supported by the substantial evidence on the record." (*Id.*)

The Commissioner argues that Claimant "does not directly challenge the ALJ's considerations of the evidence described above, but instead focuses on the ALJ's analysis of Dr. Edwards' opinion," however, "[a] review of the decision illustrates . . . that the ALJ's analysis of the opinion evidence adhered to the regulations, as [the ALJ] considered the persuasiveness of each medical opinion and discussed such in terms of the most important factors: supportability and consistency." (Doc. 12 at 20-21.) For example, the Commissioner points out that the ALJ "articulated that Dr. Edwards' opinions were 'not well supported' because this provider offered little to no explanation for his

_____

[3] Claimant also cites a notation by Dr. Rosebrook, an examining source, which was based on Claimant's self-report that Claimant had difficulties holding a job due to challenges of dealing with co-workers. (AR at 476.) Further, Claimant cites the opinion of Dr. Glickman, an examining source, opining that Claimant's current level of impairment was severe. (*Id.* at 1493.) However, Dr. Glickman also opined that Claimant "could continue to be employed with proper medication monitoring, psychotherapy with a focus on occupational considerations and/or accommodations from his employer." (*Id.*) To the extent that Claimant relies on Dr. Rosebrook and Dr. Glickman to argue that Dr. Edwards's opinions are consistent with the record, I find such reliance misplaced, as Dr. Rosebrook's opinion was based on Claimant's self-report not Dr. Rosebrook's own objective medical opinion, and Dr. Glickman's opinion on its face does not support disability as he opined that Claimant was capable of employment.

findings." (*Id.* at 21.) The Commissioner also asserts that the ALJ "found the opinions of Dr. Edwards inconsistent or 'out of proportion' with the evidence as a whole." (*Id.*) The Commissioner maintains that Claimant's "recitation of opinion evidence that was equally evaluated by the ALJ is just an improper plea to reweigh the evidence in his favor." (*Id.* at 22.)

### b. *Pertinent Medical Evidence*

On September 28, 2021, Claimant was referred by Disability Determination Services to Dr. Paul M. Conditt, Psy.D, for a psychodiagnostic disability examination. In reviewing Claimant's history, Dr. Conditt noted that Claimant reported that in 1988, when he was in the United States Air Force, he suffered a traumatic brain injury when he was assaulted by other services members and hit in the head. (AR at 1088.) Dr. Conditt noted that since the assault, Claimant has developed PTSD, depression, anxiety, and suicidal ideation. (*Id.*) Claimant reported that his concentration is "quite poor," and his short-term memory is "poor." (*Id.*) Claimant told Dr. Conditt that that the longest he could hold a job was six months to one year "before his anxiety would increase to the point where he couldn't handle it." (*Id.* at 1089.) Claimant stated that he "'can't deal with people. I'm irritable and I don't trust anyone." (*Id.*) Dr. Conditt also reviewed Claimant's current mental functioning:

> [Claimant] has tried psychiatric medication in the past, but reported that it increased his suicidal thoughts, which are already quite frequent. He has been seeing Dr. Martin Edwards, LMFT for about a year. They are discussing doing some specialized trauma treatments, but he's not sure he's ready to pursue anything that intense at this time. He rated the depression as "fairly severe. I stay in my apartment all the time. All I do is care for the dog." His energy level is "zero. I have no motivation to do anything. I haven't cleaned my apartment since I moved in 7 months ago. I start and then I just can't do it." He almost completely isolates himself, but then described how he'll talk to people online, knowing that they are scammers, up to the point where they try to get money from him.

14

In addition to nightmares, [Claimant] does have flashbacks and intrusive thoughts. . . . He is extremely irritable and feels the need to completely avoid people, both to deal with irritability but also because he doesn't trust anyone. . . .

[Claimant] had some trouble with cognitive assessment questions given to him today. Describing his concentration he said, "My mind wanders all the time." He's very easily distracted and quite forgetful. He will forget to take medication, including pain pills and blood pressure medication. He has to check his calendar 3 times a day, especially if he has more than one appointment. He doesn't retain what he reads. He was able to do simple addition and subtraction, but when asked to do multiplication, he said, "I don't know," and when asked to complete serial 7s he replied, "That ain't gonna happen."

(*Id.* at 1089-90.)

Dr. Conditt also addressed Claimant's activities of daily living:

[Claimant] will get up, walk the dog and then spend the rest of the day on social media or watching TV. "I just sit in my chair wishing I was different than I am." He lacks motivation to do chores and when he does try to do them, he has to take frequent breaks because of problems with his shoulders. He can't really vacuum because of that. Shopping elevates his anxiety to unmanageable levels, although he is able to order things online and then go pick them up.

(*Id.* at 1090.)

Upon examination, Dr. Conditt diagnosed Claimant with PTSD and mild neurocognitive disorder due to traumatic brain injury. (*Id.* at 1091.) Dr. Conditt opined that Claimant's "poor memory, combined with poor concentration, extreme irritability, and overall distrust of others significantly impairs his ability to be around people, especially in a work setting." (*Id.*) Further, Dr. Conditt found that Claimant had "no impairment" with the ability to understand instructions, procedures, and locations. Claimant had a moderate to severe impairment in the ability to carry out instructions, maintain concentration, and maintain pace. Claimant had a severe impairment in the

15

ability to use good judgment and respond appropriately to changes in the workplace. Lastly, Claimant had a marked impairment in the ability to interact appropriately with supervisors, co-workers, and the public due to anxiety, irritability, and mistrust of others. (*Id.*)

On January 28, 2022, Dr. Edwards provided Claimant's attorney a functional limitations assessment for Claimant. Dr. Edwards noted that he had treated Claimant since December 2018. (*Id.* at 1333.) Dr. Edwards diagnosed Claimant with PTSD, neurocognitive disorder due to traumatic brain injury, panic disorder, depressive disorder, and "several" musculoskeletal injuries. (*Id.*) Dr. Edwards opined that Claimant had "no useful ability to function" in the following mental aptitudes necessary for unskilled work: (1) understand and remember very short and simple instructions; (2) maintain attention for two-hour segments; (3) maintain regular attendance and be punctual with customary, usually strict tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being unduly distracted; (6) make simple work-related decisions; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms; (8) perform at a consistent pace without an unreasonable number and length of rest periods; (9) ask simple questions and request assistance; (10) accept instructions and respond appropriately to criticism from supervisors; (11) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (12) respond appropriately to changes in a routine work setting; (13) deal with normal work stress; and (14) be aware of normal hazards and take appropriate precautions. (*Id.* at 1333-34.) Dr. Edwards explained that:

> Shortly after entering the service he was injured during a hazing incident production the [traumatic brain injury]. Secondary to the injury a degradation in mood, value for his own life, attitude, perception, ability to make prudent judgments, etc., became apparent, leading to his dismissal from the USAF. This degradation essentially comprised many of the components which gave adaptability, flexibility, and personal confidence

16

with his competence in life. His demeanor and overall view of life has been punctuated by high levels of anxiety and stress intolerance, which have become inhibiting, limiting, and debilitating. He reports suicidal ideation with high degrees of frequency and admits to at least one serious attempt on his life.

The disabling condition which he presents is considered to be lifelong and not amenable or resolvable through external, e.g., medical or otherwise, intervention. The associated anxiety provokes pervasive avoidance with extreme intensification of symptomology when avoidance of interpersonal contact fails.

(*Id.* at 1334.) Finally, Dr. Edwards opined that Claimant would need "intermittent and unpredictable" work breaks during a typical eight-hour workday due to fragmented focus and concentration and anxiety driven avoidance. (*Id.* at 1335.) Dr. Edwards also opined that Claimant's prescribed medications cause drowsiness and anxiety symptoms. (*Id.*) According to Dr. Edwards, Claimant could be expected to be absent from work two or more times per month due to his impairments and/or treatment and Claimant would perform at a slow pace at least 20% of the time during an eight-hour workday. (*Id.*)

On April 26, 2022, Claimant was referred by his primary care doctor to Dr. David D. Cordry, Ph.D., for a neuropsychological evaluation. Dr. Cordry noted that the reason for the referral was Claimant having "episodes of 'losing track of chunks of time,' and concerns regarding concentration and possible history of traumatic brain injury." (*Id.* at 1523.) Claimant described his neuropsychological concerns as follows:

He described periods of time in which he "zones out" and becomes unresponsive for up to several hours. He is unable to recall what occurred during these episodes and has experienced them periodically for approximately 8 years. He additionally endorsed difficulties with misplacing objects, decision-making, slowed processing speed, misremembering what he said in conversations, and visuospatial functioning. The Veteran reported long-standing problems with concentration and distractibility, which he said began following an attempted assault during his military service in approximately 1988.

(*Id.*) Claimant also described his activities of daily living, stating that he lives alone in an apartment with his dog. Dr. Cordry noted that Claimant "is independent with ADLs but noted difficulty in consistently attending to his hygiene due to poor motivation." (*Id.* at 1524.) Upon examination, Dr. Cordry determined that:

> Conclusions regarding [Claimant's] current cognitive assessment are limited given evidence of suboptimal performance on measures of performance validity, suggesting probable reduce task engagement. That being said, he performed within normal limits across tests of processing speed, simple attention, and aspects of memory and language (e.g., semantic fluency and confrontation naming). His performances that fell within the borderline impaired/impaired ranges are unable to be interpreted with any degree of certainty due to questions of task engagement. As noted above, [Claimant] reported significant mood and PTSD-related symptoms, as well as chronic pain, which are likely to exacerbate cognitive concerns and may interfere with this ability to engage in testing. His description of cognitive problems in his day-to-day life are better accounted for by his reported psychological distress and other factors, as long-standing difficulties from a mild concussion are unlikely.

(*Id.* at 1527.) Dr. Cordry diagnosed Claimant with major depressive disorder and PTSD.

### c. *Relevant Law*

As discussed above, under the rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### d. Analysis

In considering Dr. Edwards's opinions, the ALJ determined that:

> The opinions of Martin Edwards, Ph.D., are not generally persuasive. . . . Dr. Edwards completed a certification form, apparently for accommodations under the Family and Medical Leave Act. . . . That form does not assess any specific functional limitations apart from indicating that the claimant would experience agitation around others. (Exhibit B16F). Dr. Edwards also completed a "check-box" format medical source statement. In that form, he indicated that the claimant would have "no useful ability to function" in 14 out 16 areas assessed. In the remaining two areas, Dr. Edwards indicated that the claimant would have only a "fair" ability to perform. In support of these assessments, Dr. Edwards provided brief comments with each assessment, as well as a short narrative. In that narrative, Dr. Edwards tied the claimant's limitations to his history of traumatic brain injury, and stated that the claimant's "high levels of anxiety and stress intolerance" have become "inhibiting, limiting, and debilitating." The limitations indicated by this opinion are not well supported and appear to be out of proportion to the level of limitation which is supported by the objective medical evidence. While the claimant has reported relatively persistent and serious symptoms, the record also indicates that his presentation has been regularly exacerbated by situational stressors including marital and financial difficulties. Further, the claimant has not required inpatient or emergency care treatment for his mental impairments during the period at issue, and has chosen to manage his symptoms without

19

> medications. Despite the conservative nature of his treatment he has
> continued to live independently and maintain his own activities of daily
> living. This level of functioning would appear to be inconsistent with the
> limitations assessed by Dr. Edwards. (Exhibit B34F).

(AR at 23.) The ALJ also noted that Claimant's mental impairments are supported by "persistent symptomology and some recurrent suicidal ideation" but "his symptoms have been managed with therapy and some social support. He has consistently declined medications, and it does not appear that his mental impairments have required inpatient or emergency treatment during the period at issue." (*Id.* at 24.) *See Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (finding no fault with an ALJ's determination that a conservative approach to treatment of a claimant's ailments did not support disability). The ALJ also thoroughly reviewed Claimant's mental health history. (AR at 20-21.) Further, the Commissioner correctly points out that Dr. Edwards provided little to no explanation for his findings and Dr. Edwards's opinions consisted primarily of a check-the-box form. (Doc. 12 at 21; AR at 23, 1333-34.) *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (finding that a doctor's opinion "rendered on a check-box and fill-in-the-blank form" is "entitled to relatively little evidentiary value on its face"). Further, Claimant's reliance on Drs. Conditt, Hines, Rastogi, and Oleskowicz to show consistency with the record is misplaced. As discussed above, the ALJ did not err in finding Dr. Hines's opinions unpersuasive. *See* AR at 23. Similarly, the ALJ determined Dr. Conditt's opinions were also generally unpersuasive, and Claimant does not dispute this in his briefing. *See id.* at 23-24. With regard to Dr. Rastogi, Claimant points to a progress note where Dr. Rastogi recommended Claimant resume mental health appointments because he expressed depressive symptoms to Dr. Rastogi at an appointment. *See* AR at 582. While such evidence supports that Claimant had depressive symptoms, it is of limited value in demonstrating consistency with Dr. Edwards's opinion that Claimant had a lifelong and not amenable or resolvable disabling condition. Finally,

Dr. Oleskowicz's opinion that Claimant was "socially and occupationally impaired" is merely a statement without explanation or detail. *See* AR at 769.

Based on the foregoing, I find that the ALJ both properly considered Dr. Edwards's opinions and properly addressed the consistency and supportability of Dr. Edwards's opinions. The ALJ also properly supported her conclusions that Dr. Edwards's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Edwards's opinions, and I recommend that the District Court affirm this part of the ALJ's decision.

**B.    *The Hypothetical Question***

      *1.    Parties' Arguments*

Claimant argues that the hypothetical question provided to the VE at the administrative hearing was flawed. (Doc. 10 at 22-23.) Specifically, Claimant argues that the ALJ's hypothetical question to the VE did not "capture concrete consequences" of Claimant's physical and mental impairments and functional limitations. (*Id.*) Thus, Claimant contends that the ALJ's hypothetical question was not supported by substantial evidence in the record. (*Id.*) The Commissioner argues substantial evidence supports the ALJ's RFC and hypothetical question. (Doc. 12 at 27-28.)

      *2.    Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her]

limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

An ALJ is only required to include in the hypothetical the impairments the ALJ found supported by the record. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.") (quotation omitted). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001); *see also Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) ("In order to constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the 'concrete consequences' of the claimant's deficiencies.") (Citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)).

### 3. *Analysis*

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for his complaints. (AR at 17-24.) In her decision, the ALJ found that RFC is "supported by the objective evidence as a whole, as well as the available opinion evidence with regard to the claimant's functionality during the period at issue." (*Id*. at 24.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination,

including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 17.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803.

The hypothetical the ALJ posed to the VE did "set forth impairments supported by substantial evidence in the record and accepted as true." *See Goff*, at 421 F.3d at 794. The ALJ asked the VE to:

> assume . . . [an] exertional ability to perform less than a full range of light work in that he has occasional reaching overhead on the left and never reaching overhead on the right. Posturally, he is limited to occasional climbing ramps and stairs, never climbing ropes, ladders and scaffolds, occasional stoop, frequent balance, occasional kneel, crouch and never crawl.
>
> Mentally is limited to simple, routine tasks involving simple work-related decisions, occasional contact with supervisors, interacting with coworkers and never interacting with the general public and simple work-related decisions.

(AR at 56.) It is clear that the ALJ's hypothetical question was based on the ALJ's RFC assessment, findings, and conclusions, which are supported by substantial evidence on the record as a whole. Therefore, I conclude that the ALJ's hypothetical question properly included only those impairments which were substantially supported by the

record as a whole and captured the concrete consequences of Claimant's deficiencies. *See Goff*, 421 F.3d at 794; *Hunt,* 250 F.3d at 625. Therefore, I find that the ALJ's hypothetical question was sufficient.

Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

### IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 3rd day of March, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

24